All right, our next case for argument is 24-1717 Reyes v. MSPB. Good morning, your honors. May it please the court, my name is Jeff Shramick. I represent Mr. Miguel Reyes in an appeal of an important question. Whether Mr. Miguel Reyes's petition for enforcement of a settlement agreement with the Department of Veterans Affairs was within a reasonable time with the American Citizens Protection Board. The board dismissed this matter without a hearing, holding that either a 14-month or a four-month delay was unreasonable. Well, the board only addressed the four-month delay in a tiny little footnote in the re-hearing, correct? Yes. They did not, the AJA didn't address the four-month delay. No, they didn't, your honor. I mean... And they didn't really give any rationale in the footnote. No, they didn't, your honor. They didn't really... And my review of all the cases suggests that I couldn't find one where a four-month delay was deemed to be too much delay. I could not either. I mean, in fact, there is no bright-line rule as far as how long is too long. I mean, there certainly is a unreasonable aspect of delay, but I think that the cases, if you look at them, there is no bright-line rule. It's reasonableness, right? It's a reasonableness petition. Which is kind of odd, right? I mean, usually we have a statute of limitations and we have some regulatory time frame for filing, and this seems to be based on the circumstance, reasonableness based on the circumstances of what's happening here? 100%. When you look at, say, you get, as your honors would know, if you get a decision on a disciplinary matter or something to that effect, there's a very bright-line rule as far as when that appeal has to be filed, when the petition for enforcement has to file, or not petition for enforcement, but when a petition for review has to be filed. All those things under the board's precedent are laid out for a complainant, for an appellant. Here that's not the case. Here all they have is that it must be filed within a reasonable time period, which, when left to the discretion of a pro se appellant, leaves very questionable when that reasonable time period runs, correct? And so in this particular... And the basic facts, or at least the ones that have stuck in my mind, are that you waited until it was clear that you were harmed before basically initiating the preparation to seek relief from the board, and then it took four months for those preparations to result in a filing. Yes, Your Honor, that is basically the case. Immediately after DHS had rescinded his conditional law enforcement offer, that was on September 8th, 2017, Mr. Wray recognized that the rescission might stem from the VA's disclosure, which was found later on, or I guess it was found in an OPR notice that there was something mentioned to a confidential statement, which would have been the alleged... OPR, OPM? OPR, Office of Professional Responsibility, because they had done some of the background investigation and checked into Mr. Wray's application for the deed. I have a question. Is it, just so I understand for clarification purposes, is there a dispute here about, or has it just not reached the stage where there's a dispute because they're saying it's untimely? Is there a dispute over the question of whether the agency actually breached the settlement agreement? Absolutely, if it got to that point, but that's the issue. But the government, correct me if I'm wrong, the government has already responded, because when they were responding to the MSPB, they argued both things, right? They argued untimeliness and they also argued that the settlement agreement gets the agency off the hook. Well, perhaps, yes, but there still should have been a hearing on either the credibility of that. There was a limited amount of discovery that was allowed for some reason by the administrative judge, despite the fact that he was going to dismiss the matter under a timeliness issue. We actually held a deposition of a human resources agent at the Department of Veteran Affairs, and so there was a limited amount of discovery. We could have went forward to a hearing and made a determination on a credibility basis, which most likely would have... I'm sorry, a credibility about what? Well, credibility... I guess the thing that I keep focusing on in the settlement agreement, it says, Mr. Reyes will not attempt to hold the agency liable or in breach of this settlement agreement for responses to communications. How does that not just say, that's what you're complaining about? What's the actual issue here? Sure. If you look at the settlement agreement also, Your Honor, it indicates that what the Human Resources Department was supposed to report specifically... It goes on, and for the first six months, you got to go to the top dog, and after that, you go to the designee of the top dog, and it says, you're responsible, you, Mr. Reyes, for making sure that anybody who wants information goes to the right place. But even before you get to that, you have this disclaimer of responsibility for mistaken communications. Yes, Your Honor, there is a disclaimer in there about mistaken communications, but our argument, our contention was going to be that it was referred to HR, that HR didn't disclose the proper information, that they were responsible for doing so in the settlement agreement. Also something that there hasn't been litigation about, but maybe you can help me understand. So in your petition for enforcement, you say, either order the agency to stop saying stuff about the settlement agreement, or unravel the settlement agreement, and we're gonna now litigate, re-litigate the underlying removal back from 2013 or 14 or when... And that would, that second would presumably require your client to pay back the money that he got in that to re-litigate the thing from 12 years ago. I'm a little bit stumped about, I don't know, is this really a serious possibility? And of course, everything about the settlement agreement is now publicly aired in your filings. So what good would it do to order the agency in the future to stop revealing what's in the settlement agreement? You've made it all public. Well, Your Honor, I'd say, first off, on the issue of the 12 years, either by the political environment that we've been involved in, or various other issues, not necessarily at the fault of the board itself, we've been without a quorum on numerous occasions. We haven't been able to have petitions for reviews actually followed through with, petitions for... I don't think that's Judge Toronto's question. I think Judge Toronto's question is, do you really want what you're asking for? Because what you're asking for is for us to get a lump sum payment of money in exchange for releasing his claims, and if we unravel that settlement agreement, he's got to pay that money back. And that seems like a risk for him. So is that really the relief he wants? Not necessarily, Your Honors. What can happen with a petition for enforcement, as you're very well aware, you could have specific enforcement, which could include some form of damages based on... Are you seeking relief? Are you seeking some damages because he didn't get the job, and you're saying this breach was... Yes, and the specific performance. In the alternative to specific performance, you would also... I'm sorry, that would be part of a specific enforcement, would be damages for the DHS position that he did not get? No, not necessarily. I may have misspoke on the damages issue, but the fact of the matter is, is that you can get specific performance of the agreement. Would we want to go back and unravel the... But I know you can get specific performance, but Judge Toronto's question had this two part to it. Part number one is, does he really want to give the money back and start over? Because he settled, and you've said not really, but part number two was, okay, well, the only other form of relief that he could get if we find ultimately for you here, and then they find for you below, the only other form of relief you can get is future specific performance, i.e. HR people stop saying anything about the settlement agreement. And I guess, I think Judge Toronto's question to you was, well, goodness, everything about the settlement agreement is now public. All the HR lady said is, I can't give you information about him because there's a settlement agreement. Now there's way more out there about the settlement agreement by virtue of this action. So is that really relief that would be suitable or helpful to him at the end of the day, given that it's all public now? We're a little baffled about why the case is here. I'm not going to lie. We're kind of like, why are you here? Okay. Well, quite honestly, Judge, Your Honors, we're here because of the fact that if they breached the settlement agreement and also the issue of the fact that the administrative judge, if he would have retained it, if he would have not just dismissed it under a speculative delay and actually heard the merits of the case, we may have had a breach of settlement agreement decision years ago. But now- Okay. I get that. I get maybe why you initiated the case. I'm kind of curious. I mean, your client's paying money for this. I mean, you're continuing to appeal it. What does he think he's going to get out of it now? Because cat's out of the bag on the settlement agreement. There's no putting the toothpaste back in the tube. It's all over the counter. So he can't get any relief that way. So why is he paying you to argue? What does he want? What does he think he'll get now? Not what did he think he'd get when he initiated. I hear you. I see that. But what's he going to get now? Say I fine for you. Yep. His delay was reasonable. It's not untimely. Go back. He's going to keep paying you to argue. What is the relief he has any chance of getting? And how is it going to help him? I mean, sometimes as lawyers, don't we have to advise our clients what's in their best interest? Not just whether they can possibly win an issue, but if they win, are they really going to win anything? I mean, it's quite possible that he will win something if we go back below and there is the decision that there was a breach of the agreement. We could argue and contend for that there were damages. We could contend that there were that his attorney fees. We could contend that this was all a result of his lost job with DHS. I mean, you know, so there is that argument to be made. I understand. I understand. I'm not saying that I necessarily want to go back to relitigate a 2013 case, whether or not Mr. Reyes was potentially removed under legal standards, but that would be an option for him should he decide or choose to do it. I see that my time has expired as far as my... Oh, yes. Do you want to save the rest for rebuttal? Yes, please. Sure. That'd be great. Ms. Fletcher, please proceed. May it please the Court. The Board cannot abuse its discretion in this case by finding that Mr. Reyes failed to file promptly where he waited 14 months after receiving written evidence of the alleged breach before filing his petition for... There's a standard of reasonableness that applies here. There's no clear delineation of the time frame. So it's based on the circumstances of each case, correct? Yes, Your Honor. What is reasonable under the facts and circumstances? So when he first learned about this in November 16, he had no idea whether this was going to have any consequence to his ultimately getting the job. He had a conditional job offer, and he knew in his mind the agency had done something wrong, argued allegedly a breach of the settlement agreement, but he had no idea if there would be any consequence. And if he had, in fact, filed, it would have made more of the fact that there was a settlement agreement and there was litigation. I mean, that would be kind of upfront and center. So why on earth would we want to have rules that incentivize people to move forward prematurely when there is no consequence and possibly it would have been avoided. If he got the job, there's no reason for him to file, right? Why would we want to have a system that incentivizes people having to litigate sooner than is necessary on cases that may go away on their own? Well, Your Honor, I want to respond, first of all, to the... It was actually Mr. Reyes who gave the agency the settlement agreement, and I believe he gave that to them... That's because after he learned that the cat was out of the bag, right? Yes, after he received the first... During his interview with the background investigation, and it was in November 2016 that he finally got the written record. But isn't that all the more reason why he wouldn't have been incentivized to file the allegations at that time when he thought he still had the job? He was being upfront. He said, okay, they breached the settlement agreement, allegedly. This is a problem, but I have no to believe it's gonna sabotage my conditional offer. What was his incentive to file? And why does it matter that he gave them the settlement agreement? That was perfectly a reasonable thing to do under the circumstances, was it not? Well, Your Honor, his incentive to file would be to enforce the settlement agreement with the conditions that he negotiated for. He negotiated for this NDA, this non-disclosure provision. And so he has every reason to seek to enforce that promise. No, he doesn't. That's not reasonable. That is just not reasonable. You're talking about an individual person, and the agency allegedly breached the agreement and revealed something. But he had no reason to think that revelation was gonna cause him not to get the job. He had a conditional offer for this job, and the agency breached in his background check and said stuff they weren't supposed to, according to him, but he still thought he was gonna get the job. It's not reasonable to say, go to court and fight the breach when there might not have been any harm at all from this breach. Maybe the breach was small. Maybe it was insignificant. Maybe it wouldn't affect whether he got the job. It's not reasonable to say, go enforce the settlement agreement when there's no harm from the breach. It's reasonable for him to wait to see if he's harmed first. Your Honor, I would respectfully disagree because the board's regulations are clear. This is a petition for enforcement. What regulation? The only regulation says he has to pursue it within a reasonable time. That leaves it open to question. What is reasonable under a set of facts? And the set of facts we know here is, for the first 10 months, he thought there was no harm that was gonna come to him by virtue of the agency's breach. So why would it be reasonable for someone to run to court? Do we really wanna clog our court system with cases that have no damages? I sure don't. I'm a judge. Please don't file those. Well, Your Honor, in fact, the board's standards don't require appellants to run to court. In fact, there's the Martin case in which that appellant, she had a delay of several months because she was working with the agency, communicating with them, trying to get compliance with the settlement agreement that she had negotiated. And this guy had no damages. For 10 months, he did not believe that he had been damaged by virtue of this disclosure. So why would he rush to court? Well, Your Honor, because he's interested, because he wants the VA, presumably, to stop talking about the settlement agreement. That was why, I mean, that's ultimately why he fought. Respectfully, I don't think that's reasonable at all. Is there a standard review I need to apply for reasonableness? Yes, Your Honor. What would that be? Abusive discretion, Your Honor. Which means error of law or what? Or lacking, not supported by substantial evidence. And in here, there is substantial evidence. What's the substantial evidence? Should we pull the jury? How many people think you should go to court if you have no damages? I don't see any hands. No hands are raised. Well, Your Honor, there's no requirement that you have damages in a case like this. That's under the board's precedence, Young versus USPS. In fact, there's no... There's no requirement, but we have to assess reasonableness. Yes, Your Honor. Yes, Your Honor. And it's just, I respectfully, the MSPB disagrees. We... There's perhaps... And it's also... One thing that I do want to emphasize is that the board is a tribunal of limited jurisdiction. We're not a court, not a court of general jurisdiction. So we don't necessarily have the power to award damages on a bonding of breach. It's not like consequential damages like Mr. Reyes is requesting. What it is, is a petition for enforcement. Just... How much is built into your word necessarily? Are you asserting that the board does not have the authority to award damages? Let's just focus on the very specific thing. The loss of the increase in salary that he would have gotten if he had gotten the DHS job. The board just can't do that. Is that correct? Yes, that's correct, Your Honor. We have jurisdiction to enforce the settlement agreement. And this had been a settlement agreement, for example, that had some kind of provision that allowed us to award damages, then that would be a different case. But in this case, the settlement agreement doesn't provide that. In fact, the settlement agreement appears to... It doesn't even appear to allow him to file a claim, as you pointed out, based on communications. You seem to have weighed that. Yeah, but that would have been... I think you would have gotten this panel less exercised if you had gotten into the merits of this and decided it based on what the settlement agreement says. But that's not the case before us. Yes, that is correct, Your Honor. And what about the discussion we were having with Mr. Schramick about what are we doing here? He's not, I assume, not prepared to... Assume he's not prepared to give back the non-trivial amount of money he got, perhaps with interest, and go back and re-litigate the removal that led to the settlement agreement. So petition... What's left then, and is one or the other remedy request at the end of his petition for enforcement, is tell the agencies to stop telling people about the settlement agreement. Well, to exaggerate, the whole world knows about the settlement agreement right now. Is there anything that we should be doing with that bafflement about whether resolving this question of whether it's just not unreasonable as a matter of law to wait and see if you're armed before going forward? Or is this just all kind of, we don't know, so we can't do anything about it, and maybe this will all end if we vacate remand or something? Well, Your Honor, I mean, I would say that, I mean, to me, it almost appears like the case is moot, or almost like any error by the MSPB is almost harmless, like there's really nothing. But that was not, you know, this is an issue that could be determined by the MSPB on remand that the court found it appropriate, but we would submit that the board didn't abuse its discretion. The board, in this case, this court held in POET that, you know, the time to file your petition for enforcement runs from when the appellant has actual knowledge of the alleged breach. Right, but just to, the next step, though, it seems to me, is let's assume that the time to, for petition for reinforcement begins to run when you have actual knowledge more than suspicion, in those cases, the other one with the K, Kowalski or something, Kowalski, I'm sorry, in both of which the complainant won because there was an effort to say you had to think about it even before. But assuming that's the starting point, there then remains the question, is it nevertheless unreasonable from that starting point to wait and see if you're harmed before you undertake the expense and effort of filing something? I don't think the starting point really answers, gets you all the way to the board's conclusion. Yes, Your Honor, and we believe that substantial evidence, actually, I'm sorry, pardon me, that the board didn't abuse its discretion in finding that that 14-month delay was unreasonable because, in this case, Mr. Reyes did not offer any explanation for what he was doing between November 2016 and January 2018. We just, it's just not consistent with the case law or with the approach under the restatement that you have to wait until you get, you know, consequential damages from a breach of contract. I want to move on, so finish your answer. Yes, so under the restatement, Section 235, which is court-sided in Kosarsky, is that a breach of contract is simply the non-performance of the contractual duty. And the restatement makes it clear that breach doesn't have to be substantial in order to be material, and there's no requirement of pecuniary harm under the board's cases, or we can look to the Supreme Court and Delaware State College. They have a discussing claim accrual general. They have a case where they say the focus for when a claim accrues is at the time of the defendant's actions, not upon the time at which the consequences of the act become most painful. And that's what happened to Mr. Reyes here. You know, he waited until the consequences became most acute, but the breach happened many months before. And I just want to take back to, because Judge Toronto raised a very correct point, which is, and it bothers me, because in a lot of these cases, if you're going to litigate a breach of a settlement agreement, that's going to become public in some way, shape, or form. And you mentioned in passing the word moot. You're not suggesting, I mean, I guess I'm bothered by, hypothetically, if we have a case where there's a breach of settlement agreement, and it's a clear breach. I mean, we would all sit here and agree the settlement has been breached. But he's not, you know, it's passage of time or whatever. He's not harmed. But shouldn't reasonably an employee say, I don't have the right to pursue that, even though it's not going to help me now, because everything's public, because I want to enforce the agency's obligation to adhere to settlements agreements it reaches with its employees. So the case wouldn't necessarily be mooted out in all circumstances where, well, now the cat's out of the bag now, or the toothpaste back in the tube, as the Chief said. Yes, that's correct, Judge Gross. He has a legal right to pursue enforcement of his settlement agreement. And, you know, whether it's a practical matter, that's something that an appellant wants to do, that is a separate question. I do think he has the right to pursue it, even if it seems like, you know, there's not much benefit to it. Your Honor, we would ask in the alternative that if you believe that, you know, if you find that it was reasonable for him to, that he had essentially had actual knowledge of the breach in September 2017, we would ask this Court to uphold the Board's alternate holding that the four-month delay was unreasonable. In this case, the Board did have some reasoning in that, in the footnotes that Judge Moore referenced, where it said that he just did not explain, he said, other than asserting that he was waiting until he had secured legal counsel to file a petition for enforcement, the appellant has not offered any explanation for his untimeliness. And then it's cited to some cases holding that seeking counsel does not, you know, establish good cause for untimeliness. And, in fact, there's the... Why should those cases be applicable? I mean, it's one thing when there's a, you know, 60 days to do this, at which point good cause is a true, true exception. We don't have a untimely, we don't start from a premise that this was untimely and you're now, you know, pleading for mercy. We have a standard that is, has no numbers in it. It's not until you figure out if the action was reasonable that you can conclude, as a conclusion, not as a premise, that it was untimely. So it's not clear to me why the same pretty demanding standard for good cause from a actual violation of the time limit should apply to this circumstance. Your Honor, I see my time has run. May I answer, of course? Thank you. Your Honor, we believe that it's, ultimately, it's similar issues of timeliness. Yes, it's correct that there is no hard and fast deadline. It's based on promptness. However, at the end, ultimately, and I believe, just want to... Also, I would note that this court in the Los Alamos Department of the Air Force, which is a case about timeliness and good cause. So this court has also kind of viewed, analyzed these issues in similar ways. But in fact, I believe it was in Kosarsky, they said the petition for enforcement's presumed timeliness and timely. If that's rebutted, then the burden is on the appellant to show facts establishing timeliness. And that was out in Kosarsky. Just out of curiosity, do you have any cases that held a four-month delay was not reasonable? No, Your Honor, but it's not based... It's not mechanical, like, four months is per se reasonable. It's based on the facts and circumstances. So what were you doing in those four months? During... But you have no case that said four-month delay was an unreasonable amount of time? Your Honor, I'm not aware of such a decision. In fact, aren't there one, two, three, four cases that you all cited, which resulted in a four-month delay being found to be a reasonable amount of time? I'm referring in particular to Phillips, Bostic, Martin, all of those involved four-month delays, and those four-month delays were all held to be a reasonable amount of time. Well, Your Honor, those cases are distinguishable. For example, in Martin, which I think is very, very germane, that was a case where the appellant was negotiating with the agency. She found out about the noncompliance, and she went to the agency to try to settle it informally, highlighting the concern that the panel has raised, which is... And did Mr. Reyes go to DHS about this? I mean, it turns out he went to the wrong people, but didn't he try to go to somebody about it? He communicated with OPM, and I'm not certain, Your Honor, about DHS, but the agency that was relevant was the VA, which was the agency that he had the settlement agreement with. I think he also tried to communicate with DHS. My clerk is nodding his head. I'm betting he knows. Yes. Then, yes, but that's another... It's like going to a third party and talking to them, and I think that AJ actually found... And he went to the government, and he tried to see if he could get some relief. He went to the wrong people, it turns out, but it's not like he did nothing during that four months. No, but he is aware that the agency that he made the settlement agreement with, the agency that had contractual duties was the VA, not DHS. Fair enough. Okay, let's hear from Mr. Shremek. He has some rebuttal time. Thank you, Your Honor. And not only did Mr. Reyes reach out to DHS and OPM, upon identifying that, and once the counsel was involved, they also attempted to negotiate with the VA. They sent notice to the VA that they were going to be filing a petition for enforcement. The VA didn't respond, and then the petition for enforcement was filed. So that is very similar into the case in Martin, where there was some discussion or negotiation or attempt to negotiate. I would also say that the questions being posed by Your Honors are spot on in the sense that there is no delineation of time. And even if you look at the Arnold case, which was just referenced recently, which is non-presidential, by the way, but does follow a long line of the cases that were mentioned, Kaczarski and others, you see that one of the issues in that case is that there was no distinct amount of time provided to Mr. Arnold to file his petition for enforcement. So that was an issue that the court actually looked at. Now, in that particular case, that appellant was dealing with a, I believe it was a disability claim, and that was what ultimately delayed his decision. But going back to what has been discussed a lot here today during oral argument, is exactly the case. Is that, first of all, reasonable is arbitrary. Second of all, Mr. Reyes, in this particular case, did take steps. I'm sorry, reasonable is arbitrary. Well, not arbitrary, I'm sorry. Reasonable is vague. Thank you. Thank you, Your Honor. Reasonable is vague. And in this particular case, it's clear that Mr. Reyes did take steps. Now, the other issue, as I see I have a minute left, that was addressed is, okay, well, why file a petition for enforcement? Why do it at this point? Well, honestly, sometimes when a decision is wrong, when a decision is incorrect, or it doesn't provide, it's not providing appellants with the proper information as far as when a decision, within a decision as to when a petition for enforcement should be filed, that's important to delineate. Because it's going to things that we're talking about here. Unnecessary filings with petitions of enforcement at the board. You mean for other people? Yeah. And if that's Mr. Reyes's altruistic goal, that's great. But as his counsel, I do hope that you will appropriately advise him of the likelihood of any actual personal gain that he might get. Even if you succeed, and the whole thing is not untimely, it's hard for me looking at this case to think that Mr. Reyes has any chance of any sort of remuneration, any sort of damages, both because the board is not allowed to provide that in a petition for enforcement, as well as because the settlement agreement has warts that we haven't discussed. So I do hope that you'll communicate that to him if you get a redo and your whole thing is not untimely. He needs to figure out if he wants to keep spending money on this under those circumstances. Thank you, Your Honor. And I see I'm over my time, but I thank you, Your Honors. And just to ask again that the matter be remanded for review and hearing. Thank you. We thank counsel. Case is taken under submission.